# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JENNIFER MURPHY, | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 13-1048-RGA/MPT |
| v. | ) | |
| | ) | |
| THE CITY OF LEWES, a Municipal | ) | |
| Corporation, PAUL ECKRICH, | ) | |
| JEFFREY HORVATH, JAMES L. FORD, III, | ) | |
| THEODORE W. BECKER, | ) | |
| VICTOR LETONOFF, FRED W. BEAUFAIT, | ) | |
| BONNY OSLER, and | ) | |
| LIEUTENANT JAMES AZATO, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Presently before the court is a partial motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   BACKGROUND

### A.   Procedural History

On June 10, 2013 Jennifer Murphy, ("plaintiff") filed a complaint against the City of Lewes ("City"), Paul Eckrich ("Eckrich"), Jeffrey Horvath ("Horvath"), James L. Ford III ("Ford"), Theordore W. Becker ("Becker"), Victor Letonoff ("Letonoff"), Fred W. Beaufaith ("Beaufaith"), Bonny Osler ("Osler"), and Lieutenant James Azato ("Azato") ("Defendants").[1]  On August 12, 2013, plaintiff filed an amended complaint.[2]  Both parties responded to the court's order to advise how the filing of the amended complaint affected the defendants' pending motion to dismiss.[3]  On August 19, 2013, the court

---

[1] Docket Item 1 at 1 (hereinafter "D.I. __.").
[2] *See* D.I. 11; D.I. 12.
[3] D.I. 14; D.I. 15.

dismissed as moot defendant's pending motion to dismiss.[4]  On August 29, 2013, the parties stipulated to dismiss count III of the amended complaint which alleged conspiracy under 42 U.S.C. § 1985.[5]  On August 30, 2013, defendants filed a motion for partial dismissal of the amended complaint.[6]

The amended complaint, alleges two counts.[7]  Count I claims defendants denied plaintiff a constitutionally protected property right in an employment policy, which led to termination of her employment.[8]  Count II asserts Azato, at the direction of Eckrich and Horvath, forced plaintiff, without just cause to undergo a drug test, in violation of her Fourth, Fifth, and Fourteenth Amendment rights under the Constitution.[9]

### B.    Factual History[10]

Plaintiff was employed as secretary by the City from June 12, 1988 until August 15, 2012.[11]  On June 21, 2009, the City Manager, Eckrich, issued the City's updated Personnel Policy ("Personnel Policy"), which became applicable to all city employees on June 23, 2009.[12]  The Personnel Policy contained a "substance abuse policy," Section 4.4.D.3.c, p. 64, which provides that persons with a "verified first time positive result" of random drug testing would be placed on unpaid leave, and after 30 days, if they completed counseling and treatment could return to work.[13]

During plaintiff's time with the City, she was always found to have a superior job performance,[14] and had never tested positive on a drug test.[15]  On August 3, 2012,

---

[4] D.I. 23 at 1.
[5] D.I. 16.
[6] D.I. 18.
[7] D.I. 12 at 10-11.
[8] *Id.*
[9] *Id.* at 11.
[10] Unless otherwise noted, all facts are taken from the amended complaint.
[11] D.I. 12 at ¶ 22.
[12] *Id.* at ¶¶ 23, 24.
[13] *Id.* at ¶¶ 33-35, 38.
[14] *Id.* at ¶ 46.
[15] *Id.* at ¶ 52.

plaintiff was involuntarily taken by Azato to a laboratory for a monitored drug test.[16]  As a result of the test results, plaintiff was placed on administrative leave at the direction of Eckrich.[17]  Plaintiff allegedly was not afforded an opportunity to present facts while disciplinary measures were being considered by Horvath and Eckrich, who suspended her which lead to her termination.[18]  No other City employee had been similarly treated by failing to follow the procedures outlined in the Personnel Policy.[19]  Around September 10, 2012, the results of the drug test were presented by Eckrich and Horvath to the City's Town Council, the governing legislative body.[20]  On September 10, 2012, the Town Council terminated plaintiff's employment.[21]

## III.   PARTIES' CONTENTIONS

### A.   Defendants' Contentions

Defendants contend plaintiff's amended complaint fails to plead the existence of a constitutionally protected property right in her employment.[22]  More specifically, defendants argue plaintiff did not plead the existence of a contract, implied or otherwise, that provides for anything more than at-will employment.[23]  Defendants further assert the procedures provided under the Personnel Policy do not create a property interest in plaintiff's job because procedural protection alone, without substantive protection under state law, does not create a property interest in employment.[24]

Defendants also point out, if the court finds plaintiff sufficiently pled her constitutional right to due process based on a protected property interest, the City is immune from liability under the *Monell* doctrine, because it cannot be sued under

---

[16] *Id.* at ¶ 54.
[17] *Id.* at ¶ 46.
[18] *Id.* at ¶¶ 37, 45, 46, 49.
[19] *Id.* at ¶¶ 39-41.
[20] *Id.* at ¶ 47.
[21] *Id.* at ¶¶ 49, 50.
[22] D.I. 19 at 1.
[23] *Id.* 2.
[24] *Id.*

*respondent superior.*[25] Additionally, the individual defendants are immune from liability under the qualified immunity doctrine, because their actions were reasonable in light of the positive drug test and the potential threat to the public.[26]

Lastly, defendants contend plaintiff's claim for punitive damages should be dismissed, because they are not recoverable against municipal employees operating in their official capacities, and there is no evidence of evil motive or intent that would justify such damages against the individual defendants in their personal capacities.[27]

## B. Plaintiff's Contentions

Plaintiff argues defendants' partial motion to dismiss should be denied,[28] since the amended complaint alleges sufficient facts to conclude her claims are plausible. [29]

Plaintiff contends she has a constitutionally protected property interest in the City's Personnel Policy.[30] Plaintiff points to the long recognized principle that personnel manuals and policies of municipalities can create constitutionally protected property interests.[31] Plaintiff further notes that, where a governmental entity explicitly places limitations on the ability of municipal employers to dismiss their at-will employees, it modifies the at-will relationship creating a property interest in continued employment.[32]

Plaintiff also maintains defendants failed to follow the Disciplinary Process required for terminating her.[33] Instead, defendants now blame plaintiff for their failure to properly handle that process, where the final and binding decision on review was to be made by the person initiating her termination.[34]

Additionally, plaintiff contends the City is not protected by the *Monell* doctrine as

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] D.I. 23 at 1-3.
[29] *Id.* at 2.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

4

its Mayor and City Council, through grant of Home Rule by the State, are lawfully empowered to govern the City, and are vested with all powers conferred by the charter.[35] As a result, the City is subject to liability under 42 U.S.C. 1983, as the final decision maker with full authority, and thereby are responsible for depriving plaintiff of her constitutionally protected property interests.[36] Plaintiff also argues the individual defendants do not have qualified immunity where the facts clearly establish her right in specific provisions of the clearly established Personnel Policy.[37]

Lastly, plaintiff contends she is entitled to conduct discovery to acquire facts which would impose punitive damages on defendants.

## IV.    STANDARD OF REVIEW

In analyzing a motion to dismiss under FED. R. CIV. P. 12(b)(6), a review of Rule 8(a)(2) is necessary. It requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[38] Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[39] The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[40] Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[41] "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

[39] *Id.,* citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6).

[40] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[41] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

evidence to support the claims."[42]  A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[43]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[44]  A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions."[45]  Heightened fact pleading is not required:  rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[46] The plausibility standard does not rise to a "probability requirement," but  requires "more than a sheer possibility that a defendant has acted unlawfully."[47]  Rejected are unsupported allegations, "bald assertions," or "legal conclusions."[48]  Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[49]  Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss," which is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[50]

---

[42] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

[43] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

[44] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[45] *Twombly*, 550 U.S. at 555.

[46] *Id.* at 570.

[47] *Iqbal*, 129 S. Ct. at 1949.

[48] *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).

[49] *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

[50] *Id.* at 1950.

Thus, well-pled facts which only infer the "mere possibility of misconduct," do not show that "' the pleader is entitled to relief,'" under Rule 8(a)(2).[51]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[52]

## V.   DISCUSSION

### A.   Plaintiff's Property Interest in Employment

Defendants assert plaintiff does not have a property interest in her at-will employment.[53]  To prove a § 1983 claim, plaintiff "must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprive[d] [her] of rights, privileges or immunities secured by the Constitution.[54]  To have a property interest in continued employment, a person "must have more than a unilateral expectation of it, [she must] have a legitimate claim of entitlement to it."[55]  A property interest may be created by a state statute or contract,[56] providing for termination with cause, or an ordinance where "the sufficiency of the claim of entitlement must be decided by reference to state law."[57]

"[An] at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer."[58]  "[A]n enforceable expectation of continued public employment . . . can exist only if the employer, by statute or contract, has actually granted some form of guarantee."[59]

---

[51] *Id.*

[52] *Id.*

[53] D.I. 19 at 2.

[54] *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1256 (3d Cir. 1994) (internal citations omitted).

[55] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[56] *Linan-Faye Construction v. Housing Authority of Camden*, 49 F.3d 915, 931-32 (3d Cir. 1995).

[57] *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

[58] *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).

[59] *Bowers v. City of Wilmington*, 723 F. Supp. 2d 700, 707-08 (D. Del. 2010) (internal citations omitted).

"[A]greements, though not formalized in writing, maybe 'implied.'  Explicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in the light of the surrounding circumstances.'"[60]  Lastly, "public employees have a property interest if the employer has set out guidelines as to the grounds for discharge."[61]

The complaint sets forth sufficient facts to indicate plaintiff had a property interest in her employment with the City.  First, the City modified plaintiff's employment by establishing Policies §§4-14.D.3.c and 6-1.B.8.  The City's policies created an implied contract requiring due process for termination, and therefore, created a constitutionally protected property interest in her employment.

These provisions constitute a property interest in continued employment, as the City's policies enumerated guidelines and specified procedures regarding termination.  Policy § 6-1.B.8 states an employee  " . . . may be dismissed for the inability to perform required work or for misconduct."[62]  Policy § 6-1.D.3.(d) limits termination to those persons who did not participate in aftercare or who had another positive drug test.[63]  These provisions detail grounds for termination.

In addition, the City's Personnel Policy and Disciplinary Process at § 6-1.B.8 regarding substance abuse are silent on whether they modify plaintiff's at-will employment status.[64]

Lastly, the City has full authority to modify employment contracts or the relationship with its employees, and thus, create property interests for its employees.  Delaware grants its municipalities the right to Home Rule which is designed "to enable

---

[60] *Perry v. Sindermann*, 408 U.S. 593 (1972).
[61] *Dixon v. Mayro and Counsel of Wilmington, Delaware*, 514 F. Supp. 250, 253 (D. Del. 1981); *Aiello v. City of Wilmington*, 426 F. Supp. 1272, 1286 (D. Del. 1976); *Morris v. Board of Education of Laurel School District*, 401 F. Supp. 188, 209 (D. Del. 1975).
[62] D.I. 12 at 5.
[63] *Id.*
[64] *Id.*

municipalities to exercise the powers of the sovereign except as limited by the State constitution or State statute."[65]  The granting of Home Rule confers substantial powers to municipalities, including to hire and fire employees.[66]  Therefore, the City is fully empowered to employ, limit, or modify an employee's at-will employment status.[67]

As a result, the amended complaint sets forth sufficient facts alleging plaintiff had a constitutionally protected property interest in her employment.

## B.    The *Monell* Doctrine

The City contends, even if plaintiff establishes a constitutionally protected property interest in her employment, it is immune from the alleged constitutional violations pursuant to the *Monell* doctrine.[68]  To state a claim for a constitutional violation based on § 1983 and *Monell*, plaintiff must show "the municipality itself, through the implementation of a municipal policy or custom, cause[d] a constitutional violation."[69]  Specifically, plaintiff must not only identify a municipal policy or custom that caused the injury, but also must allege facts showing the municipality was a "moving force" that caused the alleged injury through its deliberate conduct.[70]  To be actionable under § 1983, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability, and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[71]

Furthermore, "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies."[72]  "If the authorized policymakers

---

[65] *Schadt v. Latchford*, 943 A.2d 689, 691 (Del. 2004) (citing 22 DEL. C. § 802).
[66] *Ciaccaglione v. Town of Elsmere*, 1986 WL 1255 *3 (Del. Super. 1986).
[67] *See Id.*; *see* 22 DEL. C. § 802.
[68] D.I. 19 at 11.
[69] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).
[70] *Bd. of County Comm'rs Bryan Cty, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).
[71] *Id.*
[72] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality, because their decision is final."[73]

The City contends plaintiff has not identified a single policy or custom that deprived her of a constitutional right.[74]  It further argues plaintiff has not shown the municipality was a "moving force" that caused the injury though its deliberate conduct.[75]  Lastly, the City urges a single unconstitutional act is not sufficient to impose liability under *Monell*.[76]

Plaintiff, in her amended complaint, sets forth several policies and customs of the City which serves as the basis for the alleged violation of her constitutional property interest in employment.  The amended complaint states,

> The City of Lewes['] Personnel Policy discipline procedures specifically provide for a "first time positive result" from a random drug screen, for suspension and for 30 days of treatment, and for dismissal only as covered by Section 4-14 of the City of Lewes Personnel Policy, under limited circumstances, and then only after a subsequent 'positive result at the time of a random drug screen,' thereby establishing a custom, policy, and expectancy that such policy would be followed.[77]

Plaintiff's amended complaint further provides:

> Upon information and belief no City of Lewes employee has ever been discharged or terminated involuntarily without a demonstration that the employee has failed to exhibit good behavior, satisfactory performance, by necessity for performance, of the work or the availability of the work, or just cause, thereby establishing a custom, policy, and expectancy.[78]

Further, Horvath and Eckrick placed plaintiff on administrative leave and presented her drug test results to the Town Council of the City.[79]  The Council terminated plaintiff's employment on or about September 10, 2012.[80]  Pursuant to "Charter of Lewes" section 4, the Mayor and City council were the ultimate decision

---

[73] *Id.* at 127.
[74] D.I. 19 at 1-2.
[75] *Id.*
[76] *Id.*
[77] D.I. 12 at 6.
[78] *Id.* at 6-7
[79] *Id.* at 7-8.
[80] *Id.* at 8.

makers and final authority for the City.[81]  As a result, there is a direct connection between plaintiff's termination and the conduct of the City's policy makers.  Therefore, plaintiff has set forth sufficient facts demonstrating the *Monell* Doctrine is inapplicable under Rule 12(b)(6) analysis.

### C.   Qualified Immunity Doctrine

Defendants contend, should a constitutionally protected property interest in employment exist, the individual defendants are immune from liability pursuant to the qualified immunity doctrine.[82]  Qualified immunity is an affirmative defense, and defendants bear the burden of establishing the facts in support.[83]  A court must determine if the facts a plaintiff has alleged, make out a constitutional violation, and whether the right violated was "clearly established" at the time of the defendants' alleged misconduct.[84]  If both those inquires are satisfied, the court then determines "whether a reasonable competent official should have known that his conduct was unlawful, in light of the clearly established law."[85]  When determining the validity of a qualified immunity defense, all facts pertinent to the defense should be provided.[86]

In the instant matter, defendants have not provided sufficient information to determine whether the application and enforcement of the drug testing policy was clearly established at the time of plaintiff's termination.  At the present stage, the court cannot determine whether any individual defendant should have known his/her conduct was unlawful since no facts concerning knowledge of the substance abuse policy and its application have been presented.  Additional information is necessary to determine the facts provided to and considered by the members of the Town Council in applying and enforcing the policy.  Therefore, at the present stage, defendants' motion to dismiss

---

[81] *Id.*

[82] D.I. 19 at 13.

[83] *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995); *see Hicks v. Feeney*, 850 F.2d 153, 159 (3d Cir. 1988).

[84] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[85] *Daniels v. State of Delaware, et al.*, 120 F. Supp. 2d 411, 418 (D. Del. 2000).

[86] *See Curley v. Klem*, 499 F.3d at 209-10.

based on the qualified immunity doctrine should be denied.

### D.    The Grievance Process Afforded Plaintiff

Defendants contend plaintiff's due process claim must be dismissed because she failed to take advantage of the grievance process afforded her.[87]  "Before bringing a claim for failure to provide due process, 'a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.'"[88]  Where the procedure would be "patently inadequate, or a sham, a plaintiff need not pursue the procedures to state a due process claim."[89]

In the instant matter, defendant contends plaintiff failed to take advantage of the grievance process afforded to her by not filing an appeal, within five days, to the City Manager.[90]  The facts, however, suggest the appeal process would have been futile.

The amended complaint sets forth sufficient facts which indicate in the instant matter that the grievance procedure was inadequate, by noting "[t]he defendant, Eckrich, was at all times relevant to the facts alleged in this complaint the City Manager of the City of Lewes."[91]  The amended complaint further provides Eckrich directed Horvath to suspend plaintiff and submitted her positive test to the Town Council.[92]  As a result, there are sufficient facts indicating an appeal to Eckrich would have been inadequate and futile.  Therefore, defendants' motion to dismiss on this count should be denied.

### E.    Punitive Damages

Defendants maintain punitive damages are not recoverable in this case.[93]  Punitive damages are not warranted against a municipality or against municipal officials

---

[87] D.I. 19 at 8.
[88] *Wilson v. MVM, Inc.*, 475 F.3d 166, 176 (3d Cir. 2007).
[89] *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).
[90] D.I. 19 at 9-10.
[91] D.I. 12 at 1.
[92] *Id.* at 7-8.
[93] D.I. 19 at 14.

who are acting in their official capacity.[94]  Punitive damages are available against municipal officials acting in their individual capacity.[95]

In the instant matter, Ford, Becker, Letonoff, Beaufait and Osler, the City Council members, were acting in their official capacity when they terminated plaintiff.  Their conduct occurred during a Council meeting after being presented with plaintiff's positive drug test results.[96]  These defendants were acting pursuant to the authority granted to them by the City's Town Charter, which gives Council final authority.[97]  Moreover, the amended complaint states, "[t]he defendant[s] Ford . . . Becker, . . . Letonoff, . . . Beaufait, . . . [and] Osler [were] at all times acting under color of law and authority vested in [them] by the defendant, the City of Lewes,"[98] and thereby identifies that defendants' alleged misconduct occurred while operating in their official capacities.  As a result, defendants' motion to dismiss punitive damages against Ford, Becker, Letonoff, Beaufait, and Osler should be granted.

Plaintiff's amended complaint also demonstrates Eckrich and Horvath were acting in their official capacities when they suspended plaintiff and presented her drug test results to Council:

> the defendants Horvath and Eckrich provided the defendants, at the Town Council of the City of Lewes meeting on or about September 10, 2012, information concerning the plaintiff's testing, in the belief since they did not have the authority to terminate the plaintiff's employment without approval of the members of the City of Lewes Town Council, despite the authority granted to Echrich, as City Manager, under the City Personnel Policy, Section 6-1.B. * and A, pp. 93-95.["99]

As evidenced by this allegation, Horvath and Eckrich's conduct was in accordance with their authority as City employees, and thus, they were acting in their official capacity.

---

[94] *Leipziger v. Twp of Falls,* 2001 U.S. Dist. LEXIS 1048, at *28 (E.D. Pa. Feb. 1, 2001) (citing *City of Newport v. Fact Concerts*, 453 U.S. 246, 271 (1981); *Agresta v. Good*, 797 F. Supp. 399, 410 (E.D. Pa. 1992)).

[95] *See Savarese v. Agriss*, 883 F.2d 1194, 1203-05 (3d Cir. 1989).

[96] D.I. 12 at 8.

[97] *Id.*

[98] *Id.* at 2-3.

[99] *Id.* at 8.

This finding is further supported in the amended complaint by the allegation, "[t]he defendant[s] Eckrich . . . [and] Horvath, [were] at all times relevant to the facts alleged in this complaint . . . acting under color of law and authority vested in [them] by the Defendant, the City of Lewes."[100]   No where in the amended complaint is it alleged defendants are being sued in their individual capacities or the bases for such a claim. Therefore defendants' motion to dismiss plaintiff's punitive damage claim against Eckrich and Horvath should be granted.

**VII.    ORDER AND RECOMMENDED DISPOSITION**

For the reasons stated herein:

IT IS RECOMMENDED that defendants' motion to dismiss (D.I. 18) should be granted in part and denied in part, specifically

1.    Defendants' motion to dismiss for failing to state a protected property interest in employment be **denied**.

2.    Defendants' motion to dismiss based on the *Monell* doctrine be **denied**.

3.    Defendants' motion to dismiss based on qualified immunity be **denied**.

4.    Defendants' motion to dismiss based on plaintiff's failure to complete the grievance process be **denied**.

5.    Defendants' motion to dismiss punitive damages against the individual defendants be **granted**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

---

[100] *Id.* at 1-2.

14

Date:  November 26, 2013                    /s/  Mary Pat Thynge
                                            UNITED STATES MAGISTRATE JUDGE